[S. F. No. 844.   Department One.—March 31, 1898.]

JOHN BERMINGHAM, Appellant, v. ALFRED H. WILCOX
et al., Respondents.

TRUST—LIABILITY OF TRUSTEES—INVESTMENT IN BONDS OF CORPORATION.—
An investment of trust funds in the bonds of a corporation whose
property was encumbered and of little value, and in which the
trustee was a stockholder and director, was in effect a dealing by
such trustee with the funds of his beneficiary for his own advan-
tage, within the prohibition of section 2229 of the Civil Code, and
for which he must account to the beneficiary, at the option of the
latter, irrespective of the character of the bonds.

ID.—NEGLIGENCE OF COTRUSTEE.—Where a cotrustee by his negligence
enabled the other trustee to use the moneys of the trust in the pur-
chase of such bonds, and, on the death of the other trustee, adopted
and approved the purchase, and accepted the bonds as an investment
for the beneficiary, such cotrustee, as well as the estate of the de-
ceased trustee, is liable to the beneficiary for the amount of the in-
vestment, with the interest thereon.

ID.—MANAGEMENT OF TRUST ESTATE—LIABILITY FOR NEGLIGENCE.—The fact
that the author of the trust in his lifetime had intrusted each of the
persons who afterward became his trustees with the management of
different portions of his property, did not authorize the trustees to
divide the management of the trust between themselves, after they
had entered upon the duties of the trust, so as to escape the liability
of one for negligence in permitting the other to waste the trust
estate, or in failing in his duty to make an investigation into the
condition and investment of the trust fund by the other, and in
allowing such fund to remain under the exclusive control of the other
trustee for a longer period than the circumstances of the case rea-
sonably required.

ID.—DECEASED TRUSTEE—ESTOPPEL.—The beneficiary is entitled to a joint
judgment against the negligent cotrustee, and the trustee who made
the prohibited investment, or against the estate of the latter after his
decease; and he is not required to exhaust his claim against such
estate before seeking to enforce it against the negligent cotrustee.
The cotrustee cannot allege his negligence in permitting the invest-
ment by the deceased trustee as a reason why he should not be liable
to the beneficiary until the estate of the deceased trustee has been
exhausted; and he must bear the loss or inconvenience of any delay,
rather than the beneficiary.

ID.—ACTION BY COTRUSTEE—ACCOUNTING—PLEADINGS.—In an action by a
surviving trustee for an accounting and settlement of the trust, con-
tribution against the estate of a deceased trustee cannot be enforced,
and the rights of the beneficiaries to an immediate settlement of the
trust cannot be postponed for the purpose of determining the rights of
the trustees as between themselves; and where no issue was pre-

sented by the complaint as against the estate of the deceased trustee as to the propriety of the investment made by the deceased trustee in bonds of a corporation in which he was a stockholder, and it appears that the surviving trustee had received the bonds in question from the representative of the deceased trustee without objection to the investment, and in his complaint averred that they were part of the property held by him, and in his answer to the cross-complaint of the beneficiary alleged that the investment was a careful and prudent one, authorized by law, the plaintiff is not entitled to have any adjudication of the rights between himself and the estate of the deceased trustee determined under the pleadings; and the beneficiary is entitled to have judgment against the plaintiff without waiting for the court to ascertain whether the estate of the deceased trustee is liable to the plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Blake, Williams & Harrison, and E. W. McKinstry, for Appellant.

William Matthews, for Respondents.

HARRISON, J.—By the last will and testament of Alfred H. Wilcox the plaintiff and one E. F. Spence were appointed its executors, and certain real and personal property was devised to them in trust for the use and benefit of four minor children of the testator, to be transferred to them respectively as they should arrive at the age of twenty-one years. At the close of the administration of the estate, September 4, 1885, the property so devised in trust was distributed to them in accordance with the terms of the will. In November of that year they reported to and filed with the court their acknowledgment that they had received the said property so distributed to them in trust, and thereupon were discharged from their duties as executors. In the lifetime of the testator they had each acted as his agent—the appellant in San Francisco and Spence in Los Angeles—and had been intrusted by him with the management of portions of his property, each, however, acting independently of the other, and only in such matters as the testator placed in their hands. At his death, in August, 1883, each of them had

under his management different portions of the property thus placed in their control, and they appear to have continued to retain such separate control and management after their appointment as executors down to the date of the distribution to them as aforesaid, and thereafter until the death of Spence in 1892, after which the plaintiff acted as sole trustee. Upon the death of Spence the appellant went to Los Angeles to take possession of the trust estate that had been in his hands, and received as a portion thereof certain bonds of the San Luis Obispo Bituminous Rock Company, amounting to the par value of $10,000. Alfred H. Wilcox, the youngest of the beneficiaries, came of age October 13, 1893, and in May, 1894, the plaintiff brought this action against him and the personal representative of Spence for the allowance and approval of his accounts by the court and to have the trust estate in his hands ascertained and specified. In a schedule annexed to his complaint he names the aforesaid bonds as a portion of the trust estate in his hands, and there is annexed to the answer of the personal representative of the estate of Spence a statement purporting to represent the receipts and disbursements by Spence in his lifetime for the account of the trust estate in his hands, in which is charged for said bonds under the date of December 23, 1890, the sum of $10,087.50. This item in the account is contested by Wilcox, upon the ground that it was an unauthorized investment of the trust moneys, and that plaintiff is liable to him therefor by reason of his negligence in permitting Spence to make the investment. The court found that the payment of $10,087.50 for said bonds was an unauthorized investment of the trust funds, and that the bonds should not be included in the property of the trust, but that the amount paid therefor should be retired from the accounts, and that the plaintiff, as well as the estate of Spence, is liable to Wilcox for said amount. Judgment for this amount was accordingly rendered in favor of Wilcox against the plaintiff and also against the estate of Spence, the latter to be paid in due course of administration. From this judgment and an order denying a new trial the plaintiff appealed. No appeal has been taken on behalf of the estate of Spence.

The appellant contends that the court erred in finding that the investment in the bonds by Spence was not within the pur-

poses of the trust, and was unauthorized, and also that, even if the investment was unauthorized, as it was made by Spence without his knowledge, he is not liable for any loss resulting therefrom, or at least until the estate of Spence shall have been exhausted; and, further, that he is entitled to a decree herein that the estate of Spence pay the money into court to take the place of the bonds.

1. The court finds that Spence purchased the bonds for his own account, and paid therefor with the trust funds in his hands, and nearly a year afterward placed them among the securities held by him for the beneficiary, but never at any time made any written declaration that they were the property of the beneficiary, or a portion of the trust estate. The sufficiency of the evidence to justify this finding is concisely presented in the opinion of the judge of the superior court as follows: "On December 22, 1890, Spence bought the bonds; on December 23, 1890, he drew a check for $10,087.50 to pay for the bonds; a copy of the check is in evidence; it is addressed to the First National Bank of Los Angeles, of which bank he was president; it is not payable to anyone; it is payable to '20 bonds 500 each San Luis Obispo Bituminous Rock Co.'; it is charged 'to the account of A. H. Wilcox'; it is signed 'E. F. Spence'; from this it does not appear to whom the money went; it does appear that it went from Wilcox; as the check was signed 'E. F. Spence,' the money of Wilcox to the extent of $10,087.50 must have been in the private account of E. F. Spence; the bonds appear on the books of the bituminous rock company as the bonds of E. F. Spence; they were bought by Spence on the twenty-second day of December, 1890; the extract from the bond-book in evidence shows that on the 10th of May, 1891, $350 interest was paid on these bonds; the account of Spence, trustee of the A. H. Wilcox estate, appended to Mrs. Spence's answer to the complaint, shows that he did not credit this interest to Wilcox until November 10, 1891; it may be inferred that Spence did not until that date consider Wilcox the owner of the bonds. In answer to these facts it is urged that the check would have proved that the purchase was for Wilcox. The check was in Spence's possession. It could have been produced or withheld at his pleasure. It shows when produced that he used the money of his *cestui que trust* to buy

bonds for himself; but, apart from all this, Spence was a stockholder in and director of the bituminous rock company; the trustee thus sold to his *cestui que trust* bonds in which he was interested."

The court also finds in its third finding that the San Luis Obispo Bituminous Rock Company was a private corporation, organized and created by Spence and others for the purpose of mining and dealing in bituminous rock, and that at the time the bonds were purchased by Spence, and also at the time when he placed them among the securities belonging to the trust estate, the property of the corporation was encumbered and of but little value, and that during all this time up to his death Spence was both a stockholder and a director in the corporation. As there is no exception to the sufficiency of the evidence to sustain the finding of these facts, it must be held that the investment of the trust funds in these bonds by Spence was in effect a dealing by the trustee with the funds of his beneficiary for his own advantage—a loan of the money to himself—which is forbidden (Civ. Code, sec. 2229), and for which he must account to the beneficiary at the option of the latter (Civ. Code, sec. 2237), irrespective of the character of the bonds.

2. The court finds that the plaintiff by his negligence enabled Spence to use the moneys of the trust in the purchase of the bonds, and that on the death of Spence he adopted and approved the purchase, and accepted the bonds as an investment for the beneficiary; and thereupon held that the plaintiff, as well as the estate of Spence, is liable to the beneficiary for the amount of the investment, with interest thereon. (Civ. Code, secs. 2239, 2262.) It is contended by the appellant that this finding is not supported by the evidence; but it cannot be said that there is an entire absence of evidence in support of the finding, or that the evidence was insufficient to authorize the court to make the finding.

The fact that Wilcox, the author of the trust, in his lifetime had intrusted the plaintiff and Spence with the management of different portions of his property did not authorize them to divide the management of the trust estate between themselves after they had entered upon the duties of the trust. He had the right to do what he would with his own, and could take whatever risk

or chances he chose. In his lifetime Spence and the plaintiff were merely his agents, and their authority was such as he chose to confer upon them, and which he could change or revoke or enlarge at will. He could ratify or repudiate any unauthorized act of either of them. Neither of them as his agent bore any relation to the other, or could be made liable for any act or misconduct of the other; but when they accepted the trust which he created, and entered upon its management, their duty to the trust estate was determined by fixed principles of law, which they were not at liberty to disregard by reason of the fact that in his lifetime he had authorized or consented to a different management of the property in their hands. They took the trust estate into their management in 1885, and, although there was no express agreement between them that each should have the exclusive management and control of a portion of the property, the retention by each of the estate then in his hands, as well as its subsequent management and control, was mutually assented to, and in this manner, and by reason of such permission and assent, Spence was enabled to make the investment. It was not necessary that there should have been an express agreement between them for a division of the management of the estate in order that one should be liable for the acts of the other. "Where an executor by his negligence suffers his coexecutor to receive and waste the estate, when he has the means of preventing it by proper care, he is liable to the beneficiaries under the will for the estate thus wasted." (*Adair v. Brimmer*, 74 N. Y. 539.) It is true that the plaintiff was not authorized to withdraw from the control or custody of Spence any of the trust moneys in his hands, but his duty toward the beneficiary required him to make himself acquainted with the fund, and to examine into its condition and investment. His obligation to the trust has been defined by a distinguished jurist to require him to exercise the same measure of diligence that a man of ordinary prudence would be expected to exercise in the care of his own property under the same circumstances. (*Jones' Appeal*, 8 Watts & S. 143; 42 Am. Dec. 282.) Mr. Lewin says (1 Lewin on Trusts, 265): "Though a trustee joining in a receipt may be safe in merely permitting his cotrustee to receive in the first instance, yet he will not be justified in allowing the money to remain in his hands for a

longer period than the circumstances of the case reasonably require." The plaintiff appears to have been not unmindful of this obligation, nor to have contented himself with surrendering to Spence the management of the property in his hands, or to have failed to interest himself in the investments made by Spence, for he testifies that he frequently visited Los Angeles, and that at those times Spence would show him his account, what he was doing with the money, loaning it in various directions, and where he had invested it. It does not appear at what times he saw the account of Spence or talked with him about his investments, and, although he testifies that he does not remember when he first learned of the investment in these bonds, or that he ever talked with Spence about it, yet, if he visited Los Angeles frequently and talked over the matter of the trust estate with Spence, the court would very properly assume, either that he must have learned about this investment and its character, and that Spence had in reality been loaning the money to himself, or that he had been negligent in failing to make the investigation. When he went to Los Angeles, after the death of Spence, to take possession of the trust estate, he made inquiry about the character of the bonds, and received them as a part of the trust property without any objection, and shortly after tried to dispose of them, but could find no market for them, and has now presented them in his account as a part of the trust estate.

3. As the court found that by reason of the negligence of the plaintiff he was equally liable with the estate of Spence for the amount invested in the bonds, and eliminated the bonds and the amount invested in their purchase from the account, it properly held that the beneficiary is entitled to a judgment for this amount against each, and properly refused to hold that he should exhaust the claim against the estate of Spence before seeking to enforce it against the plaintiff. Since the liability of the plaintiff results from his negligence in permitting the investment by Spence, he cannot allege such negligence as a reason why he should not be liable until the estate of Spence has been exhausted. The beneficiary is entitled to the immediate enjoyment of his property, and the plaintiff, rather than he, should bear the loss or inconvenience of any delay.

4. The plaintiff is not entitled to have an adjudication of the rights between himself and the estate of Spence determined in this action.   Upon the termination of a trust that has been created to manage and hold property for the benefit of another during a limited period, the beneficiary is entitled to the immediate possession and enjoyment of the trust estate, as against all the trustees, and to have their account, as well as the amount of the estate in their hands, settled and determined, and such possession and enjoyment should not be postponed for the purpose of determining the rights of the trustees as between themselves. Whether the proceeding for this purpose is instituted by the beneficiary or by one of the trustees is immaterial.   All of the trustees should be made parties to the suit, in order that the judgment settling the account as between them may be a conclusive basis upon which to determine the amount of contribution between themselves; but, whether such contribution is to be made, or the amount thereof, is to be determined in a subsequent and separate proceeding.   Mr. Perry, in his treatise on Trusts, section 876, says that in a suit by the *cestui que trust* "the cotrustees ought to be made parties (although the equities between themselves cannot be adjusted), for the reason that the decree of relief to the *cestui que trust* is the foundation of the relief to the cotrustees *inter sese.*"   Upon the same subject Mr. Pomeroy says (Pomeroy's Equity Jurisprudence, sec. 1081) that when two or more trustees are jointly and severally liable in the same amount for a breach of trust which consists in "a failure to make proper investments," a right of contribution exists among themselves, to be maintained in a suit brought for that purpose.   "In such cases, upon the general principles of equity pleading, all the trustees who are liable should be joined as defendants in a suit brought by the beneficiary.   The contribution, however, cannot be enforced in that suit."

Moreover, there are no issues presented herein between the plaintiff and the estate of Spence which would have justified the court in rendering a judgment in his favor against the estate. In his complaint the plaintiff made no issue with the estate as to the propriety of the investment, or whether it was made with or without his assent. He had received the bonds in question from the representative of Spence, without any objection to the investment, and in the complaint herein avers that they are a part

of the property held by him as the surviving trustee. They had been received by him several years before the commencement of this action, and in his answer to the cross-complaint of Wilcox he alleges that the investment by Spence was a prudent and careful investment of said moneys, and was authorized by law. Section 568 of the Code of Civil Procedure does not authorize a judgment between codefendants, in the absence of any issues upon which evidence may be received or findings made for the support of the judgment. When the court determined that the plaintiff, equally with the estate of Spence, was liable to Wilcox for the amount invested in the bonds, Wilcox was entitled to have judgment entered in his favor without waiting for the court to ascertain whether the estate of Spence was liable to the plaintiff, or, if so, upon what terms or in what proportion the liability should be measured or satisfied—whether the plaintiff should keep the bonds or return them to the estate of Spence, or by what mode their value should be ascertained. The plaintiff did not offer to pay into the court for the benefit of the beneficiary the amount of money represented by the bonds, nor did he offer to amend his complaint for the purpose of presenting issues upon the respective liability of himself and the estate of Spence for any loss that might ensue upon a sale or other disposition of the bonds; nor did he offer to return the bonds to the estate of Spence as a condition upon which the estate should pay the money into court. The court very properly declined to enter into the investigation of the respective liability of the plaintiff and the estate, and to render a judgment upon such issue.

The judgment and order are affirmed.

Garoutte, J., and Van Fleet, J., concurred.